Mr. Stoltz, and you reserve 5 minutes of your time. Yes, sir. All right. Good morning, Your Honor. Yes, Your Honor. May it please the Court. The Veterans' Court's legal error can be found on page 4 of the Joint Appendix. It found that 38 CFR Section 3.303B was not for application. Mr. Manigault was diagnosed with schizophrenia and serves. That's in Appendix 13. Counselor, let's deal with a real threshold issue. Can you point to the legal question involved here? Because otherwise it appears that we're being asked to reweigh the facts of the case. And as you well know, we don't have the jurisdiction to do that. Absolutely, Your Honor. I think that the legal inquiry starts with the original conclusion of law in 1982, which when the board concluded as a matter of law that Mr. Manigault was not entitled to service connection, it misinterpreted 3.303 and 3.309, which were the same then as they read now. As a matter of law, once Mr. Manigault was diagnosed with schizophrenia Now, did it misinterpret it, or are you saying they misapplied it? They didn't apply 3.3 at all. And that leads us to the Veterans Court's legal error when it said, well, the board didn't even need to apply 3.303 because it found that he didn't have schizophrenia. That's the legal error. And as Your Honor knows under the clearly and unmistakably erroneous standard, whether the board applied the correct law in 1982 is the inquiry to find under this set of circumstances for a clear and unmistakable error because we're not arguing that the facts were not before the board. So that's the legal error. I mean, I get your argument. And honestly, this is a pretty pathetic case. I mean, you know, he's clearly now been diagnosed with schizophrenia, and he's just asking for a few years of back benefits. But it seems to me that the problem is in order for your legal argument to apply, there has to be an undisputed finding that he had schizophrenia in service. And although there are some references to that from like MEB and PE proceedings, there's also references to VA exams immediately after and at the same time these proceedings were occurring that diagnosed him with a personality disorder, which I think you agree is not compensable. And so what I don't understand is how we get from all these competing factual diagnoses and ultimately the VA in the, I think, 82 decision saying he doesn't have schizophrenia, he has a personality disorder, how we get over that? Because don't we have to have an undisputed finding of schizophrenia in service for 303B to apply? You get over it, Your Honor, by applying and interpreting the law correctly. Because the court, when it arrived, it was stopped. Mr. Megill had a shield, 3.303B and 3.309. As a matter of law, if you follow the plain language of 3.303, he meets it all the way through. He's diagnosed in service. Okay, but this is where I have a little bit of a hard time getting to the factual conclusion that you're relying on because does it mean that any diagnosis in service of schizophrenia is controlling forever? Or, you know, sometimes these things happen, you know, these kind of illnesses are very hard to diagnose. If he's diagnosed with schizophrenia by one doctor, goes to another hospital, but says, we're not sure, let's follow up, and goes to another hospital and that doctor says, no, it's not schizophrenia, it's personality disorder. Then he gets out, a PEB looks at him and says, oh, yeah, it is. But the VA at the same time says, no, it's not. You know, you have one finding, at least, of schizophrenia, maybe two, but you have some others going the other way. So how do we get a resolve as a matter of law he had schizophrenia in service when the VA itself found he didn't? It is a complicated question, which is why the regulations exist to help veterans. 3.303 and 3.9, and Groves a little bit and Walker a little bit discussed these. And Groves is a guidepost in this case because it establishes that there's a presumption. It is precisely, Your Honor, because these are difficult questions, that these regulations exist to shield veterans from VA going out and developing the record when they no longer have to under the law, when they develop these things and then rely on the one piece of evidence that is detrimental to the veteran to deny the case. I would submit that that's the reason the regulations exist. That's the reason why it's a legal question. But don't you still have to have an undisputed finding of service in current of this happening in service? I mean, I know, hypothetically, I know it's not exactly this case, but what if you actually did have this guy goes to the doctor at his local base and the doctor, who's a general practitioner, says, oh, I think he might have schizophrenia. And then sends him off to a specialist psychiatrist who says, oh, no, you have borderline personality. I mean, there you have, what do we do with that? I mean, does the regulation kick in just because one person has said it? Well, the regulation does kick in, Your Honor. And the regulation is clear because it contemplates, the regulation doesn't contemplate different diagnoses from different doctors at different times. It's very specific. It contemplates, and Groves again talks about this, it contemplates the inner current causes. For example, if maybe he's diagnosed with schizophrenia and then there's a drug abuse problem or something like that, perhaps, I'm just kind of spitballing a hypothetical, perhaps that is the inner current cause that would make a very different case. It may not arise to clear an unmistakable error from the board. I think what I'm hearing from you, as long as there's any diagnosis in service, even if there's overwhelming evidence to the contrary, this regulation kicks in. The regulation kicks in because 3.309 says it's a psychosis, which it is in this case. It meets, it starts to fall under these presumptions. And it becomes a presumption. Any presumption, of course, Your Honor, is rebuttable. Let me ask it the other way. What if you had two or three doctors look at it and say, he has a personality disorder, let's refer him for processing out. And at some point, somebody says, oh, well, maybe we should look at schizophrenia. He might have schizophrenia. And then he goes to another psychiatrist and says, oh, well, he doesn't have schizophrenia. Is your view, even that one straight opinion, medical opinion, is enough to kick in a presumption? No. He would have to be diagnosed. And I think that diagnosis is fine, Your Honor. But he'd have to be diagnosed again at any later date. That's what 3.03 specifically says. It is a very pro-claimant, pro-veteran regulation. There's no doubt about that. But it's supposed to be. And so that one diagnosis, Your Honor, doesn't... Okay, wait a minute. So I think you're taking me a little bit further along. Are you saying that once, at some later stage, he gets diagnosed with schizophrenia, and you look back and say, well, even though there are lots of competing diagnoses, as I said, he hadn't, if there was one in there, that's enough to say that regulation should have applied? And that, I think, Your Honor, and I don't think I clearly answered it, is why Your Honor kept using the word undebatable. It doesn't have to be undebatable. The regulation doesn't require undebatable evidence. The regulation requires diagnosis and service, diagnosis again at any later date, no matter how remote. And that, I think, is the key here. But it still doesn't answer what happens when there's competing diagnosis and service and whether that's... Because it seems to me what you're saying is that this presumption is almost going to be retroactively used for Q later on, because if the VA at the time thought he didn't have schizophrenia, there wouldn't be no reason for them to use this presumption. So under Your Honor's hypothetical, if I'm understanding it correctly, the diagnosis would have come after an adjudicate, the second diagnosis that we're talking about, would have come after an adjudication? Yeah, like the word decision here. And so Your Honor would be concerned about it going back and being used pretty much willy-nilly any time, because he might say, well, you should have seen into the future. That's not what I'm asking. What I'm concerned about is if the VA has a record before it, and it's the fact finder, and I don't think you're saying that it's bound by separate diagnoses from the different army or military system. I mean, they're certainly instructive. But it looks at it anew and says, well, despite these diagnoses from the military doctors, we've looked at this, and our conclusion is no schizophrenia, personality disorder. Why would they think to apply that presumption at that time? Because there would be no schizophrenia to apply it to. And under Your Honor's scenario, there is no diagnosis. Well, yeah, sure, there's the military doctor's diagnosis. You recognize, I think, that there can be multiple diagnoses. Absolutely. But isn't this what happens when somebody departs the military? There may be some medical opinions from the military doctors that led up to the discharge, which has different standards, I'm sure you know, than the benefit. And the VA gets the file and says, well, he may have schizophrenia. He may not. We do our own independent fact finding, and they do a holistic look at the evidence. They don't completely disregard the military evidence. And their conclusion is, which I think was their conclusion in 82, was he does not have schizophrenia. If that's the case, why would the presumption ever kick in, just because there was one diagnosis of schizophrenia or two, when the VA has a contrary diagnosis? I think that the regulation is the regulation, Your Honor. And my answer would be that the regulation, as long as he meets the plain language of that, and there's no intercurrent cause, now perhaps the different diagnoses would be a very factual determination at that point. And then we are in facts, and I recognize, I'm losing if we're in facts. I understand that, Your Honor. But if there was some intercurrent cause under the regulation, then perhaps VA can weigh those facts. That's not what happened here, though. So I understand why. In fact, I believe that because Your Honor's question is so complicated, that might be a reason why the regulation reads the way it does. The regulatory history wasn't particularly instructive here, but it is a very pro-veteran regulation. And perhaps it is because these chronic conditions are so hard to diagnose that they have a specific regulatory path that the board and the regional offices needed to follow, so that it doesn't get bogged down in the noise of all of these different diagnoses. Now, if there's 50 diagnoses compared to one and then one, and there's some kind of intercurrent cause, that is a different scenario, because all presumptions can be rebutted. But that's not the scenario in Mr. Manigault's case. In Mr. Manigault's case, he gets it in service. He definitely gets it a time later. And as we point out in our reply brief, these are based on sound medical principles. With just the one or two VA exams in there, they're kind of, well, maybe it's a personality disorder. I think that's exactly why the regulations, it's hard to say, I didn't write them, obviously. But it seems that that's why the regulation would exist, is to cut through the complicated kind of mess that Your Honor laid out, which is a very realistic mess. Okay, you're into your rebuttal time, sir. Thank you, Your Honor. Counselor Tantum. Tantum. Tantum. How do you pronounce your last name? Tantum. Tantum, okay. May it please the court, the court does not have jurisdiction to entertain Mr. Manigault's claims. Okay, can I just jump right in and get to your friend's last point? Because it does seem to me there's a little something there, that these kind of illnesses are very, very difficult to diagnose, and perhaps there's been some hostility to diagnosing certain of them in the past anyway. Why don't we just see this as a presumption, an evidentiary presumption? And if the person comes out of the military and has a diagnosis of schizophrenia, then that regulation is evoked, and the VA has to do more to show that he doesn't have schizophrenia, and has to be declaring convincing evidence standard, which I think they didn't try to do here. But here the language of 303B sets out the standard to work through, figure out if the earlier diagnosis is one that should be relied on in the way that Mr. Manigault's counsel claims. I want you to continue with what you're saying, but let me ask you, because this makes a difference here. In 1982, was there a diagnostic impression that was made, or a final diagnosis? There was a final diagnosis in 1982, after the April 1982 one week of observation and psychiatric consultation. Okay. The impression was from an earlier VA review evaluation. To return to the question about Section B, Section B, as the court described in Walker, lays out how VA will determine whether a diagnosis like the one Mr. Manigault's referring to from the Army PED is one that can establish the credency. As the court noted in Walker, it has to be not subject to legitimate question. In this case, VA determined, based on the different diagnoses that were before it, that there was a legitimate question about what Mr. Manigault's condition was, whether that diagnosis was perhaps the correct one, whether the later diagnoses related to personality disorder, and the note, for example, in the MEB report, noted that there should be further consideration of the issue. But this question about 3.309A, setting schizophrenia as a chronic disease, because it is a psychosis, this isn't one that the Veterans Court can interpret. It didn't interpret 3.309A at all. It pointed out that Mr. Manigault argued that schizophrenia is a psychosis, but it found that the board found there was no evidence of an acquired psychotic disease. That is, there was no present disability at the time of the board decision in 1982. Mr. Manigault's counsel says that was a legal error. Without that present disability, the question of whether there was a prior diagnosis that could be one of a chronic disease wasn't really relevant. And the court explained in Walker that if a Veteran can prove a chronic disease shown in service and there are no intercurrent causes or manifestations of the chronic disease present at the time, the Veteran seeks the benefits established service connection for chronic disease. The board was looking at, at that time, there was no present disease, present disability, let alone an earlier chronic disorder noted. So Mr. Manigault's reading of 3.309A is at odds with Walker. Walker explains that there can be legitimate questions about a diagnosis made and that chronicity can be reviewed to determine if there's a legitimate question and if it's shown for purposes of service connection. Mr. Manigault's counsel has argued that the regulation does not require an undebatable diagnosis, but again, the regulation does require that it be shown for the purposes of service connection and there be no legitimate question. But why isn't it enough to point to, you know, a couple different medical opinions that said he likely has schizophrenia and that that is enough to invoke this presumption? I mean, particularly in these instances of these difficult to diagnose mental conditions, it almost seems like this should be read as kind of a burden-shifting regulation once a prima facie case is made. If that were the case, did VA afford Mr. Manigault the opportunity to have a lengthy evaluation and a psychiatric consultation that reviewed his symptoms? Sure, and in 82, they found he had a personality disorder. I mean, and again, he may be right on the wall, but this is, you know, it's just kind of troubling because clearly he came back with different evidence from different doctors and the VA ultimately agreed he had schizophrenia and opined it probably dated back to service. So now he's, just because there weren't, you know, examinations that came up with this earlier in time, but, you know, maybe examinations got more sophisticated or like, he's missing out on, you know, quite a few years of service benefits. And the nature of this illness, at least in this case, shows that it pretty much did date back to the service. So it's a little frustrating that, you know, just because they may have gotten it wrong in 82 and changed their minds in, what, like 2006, that he misses out on 14 years of benefits. Mr. Manigault, however, has not shown that there is any clear and unshakable error in the board's 1982 decision. It was based on the diagnoses at the time and this asserted error would have had to have occurred on the record as it existed at the time. Mr. Manigault has only disagreed with how the facts were weighed or evaluated by the board in 1982 and that can't be the basis for Q under 38 CFR 20.1403 D3. And in this case, Mr. Manigault has perhaps asserted that the new medical diagnosis in 2008 is what's demonstrating that the board's decision in 1982 contained Q. However, a new medical diagnosis also can't show any clear and unmistakable error. And I think, again, the... How about the 2012 board decision? The 2012 board decision that allowed... Why couldn't that be a demonstration that the 82 ruling was clear and unmistakable error? Because the 2012 board decision wouldn't have been part of the record at the time it existed at the time of the disputed adjudication in 1982. But it's a diabetically opposing ruling. However, Q has to be based on an error on the record as it occurred. Isn't that true there was an error on the record? It was because the 2012 decision came well after... I know when it came, but they said he had it all the way back. So doesn't that in and of itself mean they were wrong in 82? No, Your Honor, because the diagnosis and the... It would be, again, a disagreement with how the facts were weighed in 1982. The 2012 board decision... Well, the Veterans Court really didn't get in this much, did they? No, Your Honor. Maybe they should.  The 2012 board decision is simply weighing new medical evidence derived from a 2008 medical examination. It wouldn't have been before the board in 1982. There can't be any showing of clear and unmistakable evidence, but clear and unmistakable error in 1982. And the court has no further questions? No, we don't. Thank you, Your Honor. Ms. Stokes will give you two minutes for rebuttal. Thank you, Your Honor. This is not a factual inquiry at the end of the day. This is a legal inquiry. The bottom line is that in 1982, the Board of Veterans' Appeals did not even apply relevant extant law, which was 3.303. They didn't even apply it. The Veterans Court's error here is in excusing that failure to apply a relevant regulation, a regulation that had it been applied, and here comes the clear and unmistakable error and the misinterpretation of law. Had it been applied, the presumption would have attached to Mr. Manigault, and they would have read the plain language of 3.303, seen his diagnosis in service, based on established medical principles, seen his diagnosis after service, based on accepted medical principles, and ended the inquiry. The presumption would have attached, Mr. Manigault would have been awarded service connection and compensation for schizophrenia. It did not do so. The factual stuff is a red herring here. Had the Board properly interpreted and applied the law, it would have manifestly affected the outcome. The Veterans Court's error is in excusing that. Thank you, Your Honor. Thank you.